OPINION
{¶ 1} Defendant, Marcus Hughes, appeals from his conviction and sentence for gross sexual imposition involving a child under thirteen years of age. R.C. 2907.05(A)(4).
 {¶ 2} In the early morning hours of June 30, 2006, three year old K.D. separately told her mother, Cyrakia Dewberry, *Page 2 
and her stepfather, Marcus Collins, that: "Pa-pa put his hand in my pants (pointing to her vaginal area) and it hurt. And he licked my feet." "Pa-pa" is Defendant, Marcus Hughes, who is K.D.'s step-grandfather and the father of Marcus Collins.
 {¶ 3} Defendant reacted to K.D.'s allegation that he had improperly touched her by running out the back door of the child's residence, which is located at 1822 Ravenwood Avenue in Dayton. Defendant was unable to escape, however, and was confronted in the front yard by Marcus Collins and Ms. Dewberry's brother. After Defendant said to Collins: "What do you care anyway? That's not even your real daughter, " Collins attacked Defendant and beat him up.
 {¶ 4} Defendant eventually escaped to a nearby home. Police were called to the scene and K.D. was taken to Children's Medical Center, while Defendant was transported to Grandview Hospital. At Children's Medical Center, K.D. told Dr. Peters the same thing she had told her parents: "Pa-pa put his finger in here (pointing to her vaginal area), and he licked my feet."
 {¶ 5} Just a few hours after this incident occurred, Dayton police interviewed Defendant. He consistently admitted removing K.D.'s shorts because he thought she had to use the bathroom. Defendant denied, however, having any sexual *Page 3 
contact with K.D. or having his mouth on her feet. After being confronted by Detective Olinger with the possibility that his DNA might be found on K.D.'s feet, Defendant changed his story and said he "fake bit" K.D.'s lower leg and put her foot in his mouth. When confronted again with the possibility that his DNA might be found on K.D.'s vaginal area, Defendant changed his story again and claimed that he could not remember everything that happened because he was drunk and smoking crack. Defendant indicated that he could have done it, but he just didn't remember.
 {¶ 6} Defendant was indicted on one count of gross sexual imposition involving a child less than thirteen years of age, R.C. 2907.05(A)(4), a felony of the third degree. The matter proceeded to a jury trial. Defendant testified in his own defense and gave yet another version of the events. Defendant claimed that while carrying the child to bed he felt her panties to see if she had wet herself. While doing that Defendant lost his balance and stumbled, because he was drunk, nearly dropping K.D. and, in trying to hold onto K.D., Defendant's finger may have accidentally slipped into her vagina, causing her some discomfort. When Defendant got K.D. back into her bed, he tried to cheer her up by "fake biting" her feet. The jury did not believe Defendant's explanation, *Page 4 
and found him guilty of gross sexual imposition as charged. The trial court sentenced Defendant to a four year prison term, and classified him as a sexually oriented offender.
 {¶ 7} Defendant timely appealed to this court from his conviction and sentence.
ASSIGNMENT OF ERROR
 {¶ 8} "THE CONVICTION SHOULD BE REVERSED BECAUSE THE CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 9} A weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive. State v. Hufnagle (Sept. 6, 1996), Montgomery App. No. 15563, unreported. The proper test to apply to that inquiry is the one set forth in State v. Martin (1983), 20 Ohio App.3d 172, 175:
 {¶ 10} "[t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Accord: State v.Thompkins, supra.
 {¶ 11} In order to find that a manifest miscarriage of *Page 5 
justice occurred, an appellate court must conclude that a guilty verdict is "against, " that is, contrary to, the manifest weight of the evidence presented. See, State v. McDaniel (May 1, 1998), Montgomery App. No. 16221. The fact that the evidence is subject to different interpretations on the matter of guilt or innocence does not rise to that level.
 {¶ 12} The credibility of the witnesses and the weight to be given to their testimony are matters for the trier of facts to resolve. State v.DeHass (1967), 10 Ohio St.2d 230. In State v. Lawson (August 22, 1997), Montgomery App. No. 16288, we observed:
 {¶ 13} "[b]ecause the factfinder . . . has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness." Id., at p. 4.
 {¶ 14} This court will not substitute its judgment for that of the trier of facts on the issue of witness credibility unless it is patently apparent that the trier of facts lost *Page 6 
its way in arriving at its verdict. State v. Bradley (Oct. 24, 1997), Champaign App. No. 97-CA-03.
 {¶ 15} In arguing that his conviction is against the manifest weight of the evidence, Defendant claims that the evidence presented was insufficient to support his conviction. Defendant points out that there was no physical evidence, that is, no seminal fluid, no DNA evidence except evidence of the victim's, and no abnormal findings relating to K.D.'s physical examination that demonstrates sexual abuse. Furthermore, Defendant never admitted having sexual contact with K.D. Accordingly, Defendant argues that the jury lost its way in finding him guilty. We disagree.
 {¶ 16} This case involved alleged "sexual contact, " an improper touching of K.D.'s vaginal area for the purpose of sexual arousal or gratification. R.C. 2907.01(B); 2907.05(A)(4). This case did not involve rape or "sexual conduct" involving penile penetration of K.D.'s vagina. R.C. 2907.01(A). Therefore, the fact that no seminal fluid was found is meaningless, as is the lack of any abnormalities in the vaginal examination of K.D. such as cuts, tears or bleeding. Dr. Peters testified that physical injuries are rarely observed in these types of cases. Furthermore, the fact that Defendant's DNA was not found on K.D. is likewise *Page 7 
not significant. Annette Davis, a DNA analyst with the Miami Valley Regional Crime Lab, testified that touching does not necessarily leave behind DNA.
 {¶ 17} The jury did not lose its way in this case simply because it chose to believe K.D.'s version of the events which she told consistently to three different people, rather than the four different versions of the event told by Defendant to police and the jury. The credibility of the witnesses and the weight to be given to their testimony were matters for the trier of facts, the jury here, to decide.DeHass.
 {¶ 18} Reviewing this record as a whole we cannot say that the evidence weighs heavily against a conviction, that the jury lost its way, or that a manifest miscarriage of justice has occurred. Defendant's conviction is not against the manifest weight of the evidence.
 {¶ 19} Defendant's sole assignment of error is overruled. The judgment of the trial court will be affirmed.
 WOLFF, P.J. And BROGAN, J., concur. *Page 1